UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------

PEOPLE OF THE STATE OF NEW YORK, by
ERIC T. SCHNEIDERMAN, ATTORNEY
GENERAL OF THE STATE OF NEW YORK,

                          Plaintiffs,

      -v-                                     5:01-CV-00249

JOSEPH KRAEGER; VICTORIA KRAEGER;
SHERI KRAEGER; and VICKI JO SYVERSEN,[1]

                          Defendants.
----------------------------------

APPEARANCES:                               OF COUNSEL:

HON. ERIC T. SCHNEIDERMAN         BROOKE P. DAVIS, ESQ.
Attorney General for the State of New York   KRISTEN CLARKE, ESQ.
Attorney for Plaintiffs                   Ass't Attorneys General
120 Broadway
New York, NY 10271

AMERICAN CATHOLIC LAWYERS         CHRISTOPHER A. FERRARA, ESQ.
   ASSOCIATION, INC.
Attorneys for Kraeger Defendants
420 Route 46 East
Suite 7
Fairfield, NJ 07004

OFFICE OF JOHN J. BRODERICK        JOHN J. BRODERICK, ESQ.
Attorneys for Kraeger Defendants
32 Pine Road
Syossett, NY 11791

VICKI JO SYVERSEN
Defendant Pro Se
c/o General Post Office
Port Leyden, NY 13433

---

[1] Vicki Jo Syversen's last name is spelled incorrectly in the caption as "Syverson." The Clerk is directed to amend the caption to reflect the correct spelling of her last name as "Syversen."

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

## **I. INTRODUCTION**

Plaintiffs, the People of the State of New York, by Eric. T. Schneiderman, Attorney General of the State of New York ("plaintiffs") were granted a permanent injunction on August 24, 2001,[2] enjoining pro-life activist defendants Joseph Kraeger ("Mr. Kraeger"), Victoria Kraeger ("Mrs. Kraeger"), Sheri Kraeger ("Sheri"), and Vicki Jo Syversen ("Vicki Jo") (collectively "defendants") from obstructing access to the Planned Parenthood Mohawk Hudson Clinic, a reproductive health care facility in Utica, New York (the "clinic"). Plaintiffs now move to modify the permanent injunction. Defendants oppose and cross-move to modify the permanent injunction. Plaintiffs oppose.

The motions were considered on their submissions without oral argument.

## **II. BACKGROUND**

Plaintiffs brought this case in 2001 in order to enjoin defendants' illegal obstruction and threatening activities at reproductive health care facilities in the Northern District of New York. After a bench trial, it was found that defendants had engaged in "many acts of force, threats of force, and physical obstruction" at the clinic. New York v. Kraeger, 160 F. Supp. 2d 360, 375 (N.D.N.Y. 2001). It was determined that defendants had committed multiple violations of the federal Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248, and the

---

[2] Plaintiffs were granted a Permanent Injunction on August 24, 2001. Dkt. Nos. 39, 40. Following defendants' motion to modify, vacate, and/or reconsider the Memorandum-Decision and Order, Permanent Injunction Order, and Judgment issued on August 24, 2001, an Order was issued on December 27, 2001, modifying the August 24, 2001, Permanent Injunction. Dkt. Nos. 67, 68. The modifications made by the December 27, 2001, Order are not relevant to the instant matter and thus reference will only be made to the August 24, 2001, Memorandum-Decision and Order.

- 2 -

New York State Clinic Access Act, N.Y. Civ. Rights Law section 79-m. Id. at 365–76. For a complete recitation of the facts of this case, and defendants' protest activities at the clinic, reference is made to the Kraeger decision. Id. at 364–70. In order to ensure unrestricted access to the clinic for patients and staff, a permanent injunction was issued which established a buffer zone in front of the clinic and enjoined defendants from being present in the buffer zone. Id. at 379.[3]

The clinic, located at 1424 Genesee Street in Utica, provides various reproductive health services, including counseling and medical services related to birth control, pregnancy, and abortion. The front of the clinic building faces Genesee Street, with Francis Street running along the back of the clinic. As of the date the permanent injunction was issued, the clinic's driveway (the "old driveway") was located on the north side of the property and ran east to west alongside the clinic from Genesee Street to Francis Street, and ended in a parking lot in back of the clinic. Id. at 365. Nurses Candlelight Park ("Nurses Park"), a public park, is located adjacent to the clinic, to the north of the old driveway. Separating the old

---

[3] The buffer zone was created for the Utica clinic only, despite plaintiffs' attempt to also create a buffer zone at a clinic in Lowville, New York. The buffer zone at the Utica clinic encompasses the following parameters:

> From a point on the west side of the sidewalk perpendicular with utility pole number 28 (point 1); proceeding in an easterly direction through said utility pole to a point ten feet east of the west curb of Genesee Street (point 2); proceeding in a southerly direction parallel to the west curb to a point perpendicular with utility pole number 90 (point 3); and proceeding in a westerly direction through said utility pole to a point on the west side of the sidewalk (point 4).

Id. at 379 (the "buffer zone"). The buffer zone is outlined on a diagram attached as Exhibit 1 to the Kraeger decision. Id. It should be noted that the December 27, 2001, modification of the Permanent Injunction did not alter the parameters of the buffer zone in any way.

driveway and Nurses Park is a concrete and stone wall (the "dragon wall"), the Nurses Park driveway, and a wooden fence.[4]

In April 2012, the clinic purchased additional land adjacent to its current location and began construction efforts to expand its facilities. The clinic's land acquisition and expansion includes the addition and usage of the Nurses Park driveway (the "new driveway") and Nurses Park parking lot (the "new parking lot"), both of which are outside the buffer zone. The new driveway will provide vehicles entrance to and exit from the new parking lot via both Genesee Street and Francis Street.

The building expansion includes a new secure side entrance, built on space formerly occupied by the old driveway. As of September 2012 while construction of the side entrance was ongoing, patients and staff could only access the new parking lot by using either: (1) the Francis Street entrance to the new driveway, or (2) the Francis Street entrance to the old driveway (both located at the back of the clinic). After construction of the side entrance is complete, patients and staff will have three points of access to the new parking lot: (1) the Genesee Street entrance to the new driveway, (2) the Francis Street entrance to the new driveway, and (3) the Francis Street entrance to the old driveway. As a result, the clinic will no longer use the Genesee Street entrance to the old driveway, which is currently included in the buffer zone.

The new property line extends twenty-four feet beyond the boundary of the buffer zone. Specifically, the new property line extends to the wooden fence north of the clinic. A

---

[4] If you stood on Genesee Street facing the clinic, looking to the north (your right) you would see the following: the old driveway; the dragon wall; the Nurses Park driveway; a wooden fence; and then Nurses Park.

significant part of the sidewalk and curb in front of the clinic building, which will now be used by patients and staff to access the clinic, is not included in the parameters of the buffer zone.

III. **DISCUSSION**

"Federal Rule of Civil Procedure 60(b)(5) permits a party to obtain relief from a judgment or order if, among other things, 'applying [the judgment or order] prospectively is no longer equitable.'" Horne v. Flores, 557 U.S. 433, 447, 129 S. Ct. 2579, 2593 (2009) (quoting Fed. R. Civ. P. 60(b)(5)).  Under Rule 60(b)(5), a party may request modification of a judgment or order if "'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'"  Id. (quoting Rufo v. Inmates of Suffolk Cnty. Jail, 502 U.S. 367, 384, 112 S. Ct. 748, 760 (1992)); Davis v. N.Y.C. Hous. Auth., 278 F.3d 64, 88 (2d Cir. 2002) ("It is . . . well established that a district court has the power, in the exercise of its discretion, to modify its past injunctive decrees in order to accommodate changed circumstances.").  "The source of the power to modify is of course the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief."  System Fed'n No. 91 v. Wright, 364 U.S. 642, 647, 81 S. Ct. 368, 371 (1961); Benjamin v. Jacobson, 172 F.3d 144, 161–62 (2d Cir. 1999).  The party seeking the modification carries the burden of demonstrating the significant change in circumstances.  Rufo, 502 U.S. at 383, 112 S. Ct. at 760.  Finally, because defendants' First Amendment rights are implicated, any modification to the permanent injunction must still be (1) content neutral and (2) "burden no more speech than necessary to serve a significant government interest."  Madsen v. Women's Health Ctr., Inc., 512 U.S. 753, 765, 114 S. Ct. 2516, 2525 (1994).

Plaintiffs contend that under the current buffer zone, defendants would be permitted to access clinic patients and staff and obstruct access to the entrance of the clinic by blocking the walkway and new driveway entrances. Accordingly, plaintiffs seek the expansion of point 1 of the buffer zone, which is currently a point on the west side of the sidewalk perpendicular with utility pole number 28, to a point on the west side of the sidewalk perpendicular with the fire hydrant next to the curb (the "proposed buffer zone"). The fire hydrant is 4.5 feet north of the new property line. By contrast, utility pole number 28 which marks the boundary of the current buffer zone, is approximately 3 feet from the original property line. This expansion would include the Genesee Street entrance to the new driveway. The proposed buffer zone is indicated on a diagram submitted by plaintiffs. Davis Decl., Sept. 14, 2012, Ex. G.

In addition, plaintiffs contend the two driveway entrances located on Francis Street at the rear of the clinic, and also the entire length of the driveways, should be included in the new buffer zone. Plaintiffs urge this is necessary because the driveways are no longer protected by the dragon wall, thus there would be nothing to stop defendants from entering the driveways at a point not included in the buffer zone. Plaintiffs contend these changes will ensure that the new driveway entrance on Genesee Street, the new driveway entrance on Francis Street, and the old driveway entrance on Francis Street—all three of which will be regularly used by patients and staff—are protected.

However, plaintiffs have failed to provide a map of the back of the clinic, or otherwise indicate precisely what is included in their proposed buffer zone as it applies to Francis Street. It appears from photographs that the two driveway entrances on Francis Street are separated by a piece of public sidewalk. It is unclear whether this is included in the proposed buffer zone. Nor have plaintiffs provided any markers for where the buffer zone would begin

and end at the back entrance to the clinic.  It is also unclear from the submissions where or how the Francis Street entrance to the new driveway and the Francis Street entrance to the old driveway intersect, meet, or otherwise lead to the new parking lot.  The diagram of the proposed buffer zone submitted by plaintiffs fails to indicate any buffer zone on Francis Street.

Defendants contend the proposed buffer zone would impose burdensome new restrictions on their First Amendment liberty.  Specifically, they assert the proposed buffer zone includes the following restrictions:  (1) a 28.5 foot northward expansion of the buffer zone to include, for the first time, a swath of public sidewalk on Genesee Street as well as the driveway apron of the new parking lot, and (2) a westward expansion of the buffer zone that would effectively establish an entirely new buffer zone on Francis Street, where defendants have been advocating without restrictions since the permanent injunction was issued in 2001.  They assert that the proposed buffer zone on Francis Street would run the entire length of the sidewalk behind the clinic, encompassing not only the old and new driveway entrances, but all of the public sidewalk at the rear of the clinic.  They contend this is unnecessary because the Francis Street sidewalk is already separated from the rear of the clinic by a chain link fence and approximately 200 feet of private property.

Defendants assert they have demonstrated lawfully, peacefully, and less frequently at the clinic over the past eleven years since the buffer zone was created in 2001.  As a result, not only should the proposed buffer zone be rejected, but the buffer zone should be eliminated based on the clinic's acquisition of the new property.  Defendants argue that since the clinic has abandoned the Genesee Street entrance to the old driveway, it reverts to the status of a public sidewalk used solely by pedestrians.  Further, the new secure side

entrance will allow patients and staff to enter the clinic directly from the new parking lot, a distance from defendants and other pro-life advocates. Based on this, defendants contend the clinic has created a private property bubble zone, rendering superfluous the current buffer zone.

In the years since the establishment of the buffer zone, defendants have continued their protest activities and maintained a presence outside the clinic, with the exception of Vicki Jo, who asserts she has been to the clinic only six times since 2001. The remaining defendants regularly engage in pro-life advocacy at the clinic; Mr. and Mrs. Kraeger approximately twice a month, and Sheri once a week. Plaintiffs contend defendants' activities include screaming and shouting at patients and staff as they enter and exit the clinic, and holding up large signs with graphic images just outside the buffer zone. Plaintiffs assert that defendants spend time protesting on both the Genesee Street and Francis Street sides of the clinic. By contrast, defendants characterize their activities as holding signs, offering literature, and vocalizing their pro-life message to people approaching or leaving the clinic. Moreover, Sheri and Vicki Jo contend they have hardly ever been on the Francis Street side of the clinic since 2001; Sheri four times and Vicki Jo only twice.

It is undisputed that there have been no post-injunction criminal citations of any of the defendants related to their pro-life advocacy at the clinic. However, plaintiffs contend that defendants continue to engage in activities to frighten patients and staff, including Mrs. Kraeger hiding behind a tree or fence and shouting statements at patients and staff about killing babies as they walk by. Plaintiffs also assert that as recently as 2011, defendants videotaped patients as they entered the clinic, and since June 2012 have increased their harassment on Francis Street. Specifically, plaintiffs allege that on June 28, 2012, Mr.

Kraeger followed closely behind a patient and screamed about killing babies.  Finally, plaintiffs allege that on August 27, 2012, defendants repeatedly blocked the Francis Street driveway.[5]

Mrs. Kraeger contends she does not hide anywhere, and merely elevates her voice to be heard from a distance as required due to the buffer zone.  Defendants assert they have not engaged in any videotaping since 2002 when their video camera broke, and even then they only videotaped themselves for protective purposes.  Further, defendants dispute that any harassment has occurred, let alone an increase since June 2012.  They maintain they have engaged in the same sort of activities at the clinic without citation since the permanent injunction was issued in 2001.  Mr. Kraeger denies the June 28, 2012, allegation, stating that it is an exaggeration of protected conduct.  With respect to obstructing the Francis Street driveway, Mr. and Mrs. Kraeger reply that the Francis Street driveway is not covered by the buffer zone, and assert they have never obstructed the passage of cars on Francis Street.  Instead, they walk back and forth on the public sidewalk portion of the driveway apron and hand literature to people who roll down their windows to accept it. Finally, they dispute the characterization of the August 27, 2012, driveway blocking incident.  According to Mrs. and Mrs. Kraeger, a woman rolled down her window, had an amicable conversation with Mr. Kraeger, and accepted literature from him on the public sidewalk before driving away.

Plaintiffs have carried their burden to demonstrate that the clinic's land acquisition constitutes a significant change in circumstances.  Accordingly, the buffer zone will be modified to account for the change in property line.  With regard to the front of the clinic, the

---

[5] It is unclear whether plaintiffs are referring to the old or new driveway entrance on Francis Street.

fire hydrant on Genesee Street is a readily identifiable, public landmark that will provide clarity to defendants and law enforcement officials about the limits imposed on defendants' activities at the clinic. Point 1 of the buffer zone will therefore be modified to a point on the west side of the sidewalk perpendicular with the fire hydrant next to the curb. The remaining parameters of the buffer zone will remain as provided for in the August 24, 2001, Memorandum-Decision and Order. This modification will ensure the continuing effectiveness of the permanent injunction while preserving defendants' ability to exercise their free speech rights in a reasonable manner. The modification is consistent with the goal of the permanent injunction, which was to protect patients and staff from illegal activity by the defendants at the key points of pedestrian and vehicular access to the clinic, and is tailored to burden no more speech than is necessary to effectuate that goal. The new buffer zone is indicated on Exhibit A, attached to this Memorandum-Decision and Order.

Plaintiffs' request to expand the buffer zone to include any portion of Francis Street will be denied. Even taking as true defendants' characterization of their protest activities, it is obvious they maintain a presence on Francis Street and currently have unrestricted access to patients and staff attempting to enter and exit the clinic via Francis Street because that area is not included in the buffer zone. However, plaintiffs have wholly failed to present any evidence as to the boundaries of a proposed buffer zone on Francis Street. The logistics of the Francis Street access points have never been litigated; in fact, the Francis Street area was not even discussed in Kraeger. At this time, the buffer zone will not be modified to include the Francis Street entrances.[6]

---

[6] Plaintiffs' request will be denied without prejudice. They are free to make a subsequent motion upon proper evidence demonstrating the factual circumstances relating to the Francis Street driveway
(continued...)

Finally, with respect to defendants' motion for a modification and/or complete elimination of the buffer zone, they have not shown that a modification is necessary to accommodate a significant change in circumstances. They base their motion on the addition of the secure side entrance and the effectiveness of the permanent injunction thus far. Despite defendants' assertions to the contrary, the creation of the secure side entrance does not mean that the front entrance on Genesee Street will no longer be used or no longer requires protection. Testimony from clinic employees establishes that the front entrance will still be used. Further, as noted, the absence of any post-injunction criminal citations merely demonstrates defendants' compliance with a legal order and indicates that the injunction was successful in its protection of the clinic's access points. For these reasons, defendants' motion to modify the permanent injunction will be denied.

## IV. **CONCLUSION**

Plaintiffs have demonstrated that the clinic's land acquisition and subsequent reconfiguration of access to the clinic constitute a significant change in circumstances warranting a modification of the permanent injunction. Plaintiffs will only be granted a modification to the Genesee Street buffer zone, as reflected in Exhibit A attached to this Memorandum-Decision and Order. No portions of Francis Street will be included in the buffer zone. This modification is consistent with the goal of the permanent injunction and burdens no more speech than necessary. Finally, defendants have not shown and cannot show that the buffer zone should be reduced or eliminated.

Therefore, it is

---

⁶(...continued)
entrances, including both the geographical boundaries and defendants' conduct in that area.

ORDERED that

1. Plaintiffs' motion for modification of the permanent injunction is GRANTED as it relates to Genesee Street;

2. The parameters of the buffer zone established by the August 24, 2001, permanent injunction are expanded to now include:

> From a point on the west side of the sidewalk perpendicular with the fire hydrant next to the curb on Genesee Street (point 1); proceeding in an easterly direction through said fire hydrant to a point ten feet east of the west curb of Genesee Street (point 2); proceeding in a southerly direction parallel to the west curb to a point perpendicular with utility pole number 90 (point 3); and proceeding in a westerly direction through said utility pole to a point on the west side of the sidewalk (point 4);

3. Plaintiffs' motion for modification of the permanent injunction is DENIED without prejudice as it relates to Francis Street; and

4. Defendants' motion for a modification of the permanent injunction is DENIED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: December 18, 2012
       Utica, New York.